IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ALLEN DOUGLAS HALE, III,

    Plaintiff,

vs.                                          Civil Action No. 1:16CV113-LG-RHW

CITY OF BILOXI, MISSISSIPPI;
KENNETH GARNER, Individually; and
JOHN AND JANE DOES 1-10, Individually,

    Defendants.
_____/

## AFFIDAVIT OF W. KEN KATSARIS

Before me, the undersigned authority, personally appeared W. Ken Katsaris, who being duly sworn, states:

A.     I am currently a certified Florida Law Enforcement Officer/Instructor, and consultant in law enforcement and corrections. I regularly instruct in a wide area of law enforcement and corrections subjects at the Regional Police/Corrections Academy, where I have been teaching for over 30 years. For over 25 years, I was also an instructor at the Florida Highway Patrol Academy. I also participate in law enforcement seminars throughout the USA where I have instructed Officers, Commanders, Agency Administrators and the Attorneys representing these Agencies on a number of liability and investigation related subjects, including the Internal Review/Investigation Procedures following a complaint or incident. In the past I have instructed over 25,000 Officers from all 50 states including the Federal agencies and the Canadian Royal Mounted Police in a variety of street survival police procedures that are detailed in my C.V.

My law enforcement experience includes service as a Police Officer for the St. Petersburg Florida Police Department, the Tallahassee Florida Police Department, Deputy Sheriff with the Leon County Sheriff's Office, Trooper with the Florida Highway Patrol and

1



HALE-000001096

the elected Constitutional sheriff who performs as the Chief Law Enforcement Officer of the County of Leon, City of Tallahassee, Florida area.

My academic instructional background includes 10 years as the Department Chairman of the Criminal Justice Program at Tallahassee Community College (Tallahassee, Florida). In this capacity I directed and taught both the advanced in-service Police training programs and the degree granting programs, as well as directing the crime lab used to support local law enforcement. Extensive teaching and training including hands on skill development was taught in both criminal investigation and criminalistics courses. Academic subjects included courses in management, procedures, and criminology.

My experience includes extensive instruction to officers throughout the United States on all of the concepts, issues, and procedures for threat assessment, approaching, controlling, and restraining resisting subjects. For over twenty-five (25) years I instructed at the Florida Highway Patrol Academy on use of force policy and procedure, as well as serving as the force and deadly force advisor for thirteen (13) years to the Director of the Highway Patrol. For over thirty (30) years I have instructed at the Pat Thomas Regional Law Enforcement Academy. Some of my assigned subjects are use of force, deadly force, crisis intervention, and dealing with the mentally ill and emotionally disturbed individual. For over twenty (20) years I have been senior instructor for AELE, the nationally recognized organization providing instruction to commanders of law enforcement agencies and the attorneys representing city, county, and state agencies on civil liability claims. I also held the position of instructor for the nationally acclaimed Calibre Press Street Survival seminar where I presented specific instruction on the skills and tactics of control, including handcuffing, neck restraint systems, total appendage restraint, active counter-measures, and tactics for pressure point control. I hold certifications as a firearms instructor, use of force instructor, electronic control device (ECD) instructor, handcuffing instructor, total appendage restraint instructor, and lateral vascular neck restraint instructor.

HALE-000001097

B. To prepare for rendering opinions, I have reviewed the following materials:

1. Complaint
2. Answer and Affirmative Defenses of Defendant Kenneth Garner
3. Answer and Affirmative Defenses of Defendant City of Biloxi
4. Biloxi Police Department Policy Number 2.10: Firearms Training & Proficiency Demonstration
5. Biloxi Police Department Policy Number 3.5: Firearms and Equipment
6. Biloxi Police Department Policy Number 4.04: Tasers
7. Biloxi Police Department Policy Number 4.8: Arrest Procedures
8. Biloxi Police Department Number 5.1: Response to Resistance and Deadly Force
9. "Training Files" of Sgt. Kenneth Garner and Sgt. Darren Lea
10. Biloxi Police Department's "Use of Force Details"
11. Arrest Warrant for Allen Douglas Hale, III, with the "Underlying Facts to Affidavit"
12. Professional Certificate of Attendance at Mississippi Law Enforcement Academy for Sgt. Darren Lea and Sgt. Kenneth Garner
13. Gulfport Police Department Crime Scene Unit Reports provided by the Gulfport Police Department
14. Thumb Drive containing the following electronic materials: Taser Video; Dash-Cam Video; photographs taken by the Gulfport Police Department Crime Scene Unit
15. Defendant Kenneth Garner's responses to Plaintiff's Interrogatories and Request for Production
16. Defendant Kenneth Garner's Answers to First Set of Interrogatories Propounded by Plaintiff

HALE-000001098

17. Copies of §§ 97-9-73 and 97-35-7 Miss. Code Ann. (1972), *as amended*
18. Mississippi Bureau of Investigation (MBI) Synopsis of Investigation with Timeline prepared by MBI Investigator Shelby Smith
19. Biloxi Police Department Call Sheet Report
20. Biloxi Police Department Offense/Incident Reports prepared by numerous Biloxi PD officers
21. Biloxi Police Department Policy Number 2:13: Abuse of Position
22. Biloxi Police Department Policy Number 4.21: Line of Duty Incident Response
23. Biloxi Police Department Policy Number 4.8: Arrest Procedures

C. The below listed opinions were formulated based on my experience, training and education in the law enforcement field, the standard of care recognized by Police Organizations and Officials throughout the U.S. as the custom and practice for the administration, management and supervision of Police agencies and personnel. The opinions are based on my knowledge of the training of Police Officers throughout the U.S. in addition to my knowledge of the written standards and materials generally available for training and guiding Police Officers in their every day assignments.

D. Pursuant to engagement by attorneys for the Plaintiff in the above named case, I conducted an exhaustive review of all of the above materials. As a result of the review of these materials, which I relied upon as the basis for my opinions, I render the below opinions. These opinions are rendered to a reasonable degree of certainty in the field of law enforcement policy, procedures, training and supervision.

1. A review of the above materials involving the use of force, including a TASER deployment, and the imposition of deadly force, vis-a-vis a firearm discharge, on April 1, 2015, by Biloxi, Mississippi defendant officers Sgt. Kenneth Garner (Firearm) and Sgt. Darren Lea (TASER)

4

against Plaintiff Allen Douglas Hale, III, (Hale), at 8220 West Oaklawn Road, Lot 26, Biloxi, Mississippi, reveals serious compromises of recognized, and accepted, police practices and training. The recognized practices violated involve the approach, and verbal commands given to Hale by Garner and Lea, the appropriate threat assessment, proper Warrant service practices, commands absent sharing of information of authority, violation of TASER protocols, as well as violation of trained threat assessment involving the assessment of ability, opportunity, jeopardy, and preclusion, which are the recognized, accepted, and trained percepts ingrained as a necessity before police deadly force intervention.

2. Sgt. Garner and Sgt. Lea did have lawful authority to serve a warrant on Hale, which was issued for the non-violent crime of credit/debit card fraud which, while the warrant amounted to a felony amount of money, in _no_ way was associated, either by investigation of the crime, or Hale's criminal history, with _any_ indications Hale would be resistive, obstructive, violent or be armed with any weapon. Therefore, the nighttime approach with firearms drawn was contraindicated. However, if that high level of caution was tempered with other approach, threat assessment, and verbalization of authority and purpose necessities trained and accepted as proper practices, I would be dismissive of the firearms at the ready when there simply was no justification for this approach. But, the approach, with firearms drawn and presented was not followed by proper, accepted and trained practices for warrant service for this type of warrant with the information and history of this crime and suspect.

HALE-000001100

3. One of the issues of nonconformance with recognized police practices and procedures, as well as training provided throughout the country involves the failure of any Biloxi officer on the scene of the warrant service to inform the subject to be arrested that he/she is under arrest, and informing the subject (Hale), at the time of the arrest, the "object and cause of the arrest, which would be a known warrant and the charges. Nothing was said to Hale about being arrested or that the officers were there for the service of a warrant. Therefore I did not find that Hale was resistant or noncompliant. He was told to "step out here" and "hands out of pockets," and Hale logically asked the officer "What did I do?" This was met with "I'm gonna tase you" by Sgt. Lea. This statement by Sgt. Lea came only twenty-one (21) seconds after the officers announced "Police Department!" Hale was simply oblivious to what the officers believed was a violent threat and that certainly was not the mind set of Hale who casually said "I'm getting some cigarettes" when warned he would be tased. And within three (3) seconds of the Taser warning, Sgt. Garner threatened to shoot Hale when he said "You might get shot!" Hale said he "was putting them (cigarettes) down," when he was told to "step out here," for which he responded "OK, I am," which he did. Admittedly the video shows Hale with a cigarette and a package and did turn and put a hand in his pocket, but the violation of recognized procedures and training was the lack of informing Hale he was under arrest, and that they were serving a warrant. This is even a procedure embraced by policy of the Biloxi Police Department.

4. The entirety of the contact with Hale by the defendant officers, prior to the Taser deployment by Sgt. Lea and the almost simultaneous shooting

HALE-000001101

by Sgt. Garner, was only twenty-seven (27) seconds. Hale did not, and would not, know the authority or control level the officers were attempting to assert, because of the below standard of care, police practices, and training violations of the defendant officers in their approach, threat assessment, provision of information of their purpose and authority, and unnecessary deployment of the Taser and firearm use which also violated protocols for the imposition of _any_ force, much less deadly force.

5. There was, in my opinion also no imminent threat of bodily harm displayed or intimated by Hale during the entirety of the seconds the officers were in contact with him. The Taser deployment by Sgt. Lea was not appropriately announced by protocols that require a warning, other than "I'm gonna Tase you." The protocols call for a loud "Taser, Taser, Taser" warning to preclude other officers believing a shot was fired, and also to let other officers know the subject is about to be disabled and preclude higher levels of force. In this case, the shooting was almost simultaneous to the Taser deployment. I saw no reason for the imposition of deadly force, especially considering Hale had no knowledge of the officers purpose and authority due to the interchange of officers commands overlaid with the responses and actions of Hale seen and heard on the video tapes.

6. In fact, Hale had no obligation to actually exit his residence due to the officers failure to inform him of the arrest warrant or that he was under arrest. In fact they gave _no_ reason for Hale to need to exit his home. This information is required for compulsion of a citizen to exit their

7

[HALE-000001102]

residence, and is a recognized and accepted protocol and training subject in the area of law and police practice.

7. It is my summarizing opinion that the level of compliance by Hale was lawful and appropriate when overlaid against recognized and accepted police practices and training. Therefore, <u>any</u> imposition of force would not be appropriate, absent the implementation of the deficiencies noted above that both Lea and Garner violated.

E. If further discovery materials are provided, they will be thoroughly reviewed, and may have an impact on the above opinions. If this should occur, these revised/new opinions will be immediately revealed to the retaining party. I reserve the right to supplement and amend my opinions based upon additional information provided to me.

F. As an attachment I incorporate Exhibit "A", a complete curriculum vitae which cites a complete 36 year history I have as a member, instructor and consultant in the Criminal Justice field and a list of cases in which I have testified as an expert at trial or by deposition within the preceding four years, and my Fee Schedule and Agreement signed by the retaining firm.

Respectfully submitted this __1st__ day of September, 2016.

*[signature]*
W. Ken Katsaris

HALE-000001103

STATE OF FLORIDA

COUNTY OF LEON

Sworn and subscribed to this _1ST_ day of September, 2016, by W. Ken Katsaris, who is personally known to me.

_Sara S. Alligood_
Sara S. Alligood, Notary Public

My Commission Expires:



SARA S. ALLIGOOD
MY COMMISSION # FF 932
EXPIRES: June 16, 2017
Bonded Thru Pichard Insurance Agency

HALE-000001104