# Biloxi Department of Police
# Law Enforcement
# Policies and Procedures

| Subject: Response to Resistance and Deadly Force | Policy Number: 5.1 |
|---|---|
| Issue Date: 01 March 2007 | Last Review: 01 Jan 2015 |
| | Latest Revision: 01 Jan 2015 |
| Approval Authority<br>Title and Signature: Director John B. Miller | |

## POLICY:

It is the policy of the Biloxi Police Department that officers will respond to a suspect's resistance to control in accordance with the allowances and restrictions clearly established by applicable federal and state laws, and case law affecting law enforcement.

## DEFINITIONS:

*Authorized weapon*: A weapon approved by the department for use by its officers. No weapon is authorized for carry or use by an officer unless the agency expressly approves it and the officer has demonstrated proficiency with the weapon type in accordance with agency guidelines.

*Auxiliary weapons of availability*: An officer may become separated from their agency issued firearm or secondary impact weapons. Should this occur, the officer might have access to a *weapon of opportunity*, including but not limited to a flashlight, citation holder, handcuffs, or any object that could be used as a weapon in the defense of them self or another.

*Baton or expandable baton*: An impact weapon capable of inflicting bodily injury by striking with a portion of the weapon. Only batons authorized by the department are to be carried or used. Carrying or using saps, *Billy clubs* or *slapjacks* is prohibited.

*Chemical weapon*: Weapons capable of temporarily incapacitating a person through the controlled release of some chemical irritant or agent.

*Certification with weapon:* Officer demonstrated proficiency with a particular weapon, and been tested in its safe care and use. The officer is thereby authorized to carry and use this weapon in the performance of his official duties regardless of whether the officer is on-duty or off-duty. Without such certification, the officer may not carry or use this or a similar weapon.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.



Biloxi_Pre-D_00032

*Chokeholds:* A chokehold or choke is a general term for a grappling hold that critically reduces or prevents either air or blood from passing through the neck of a suspect. The restriction may be of one or both and depends on the hold used and the reaction of the victim. The lack of blood or air may lead to unconsciousness or even death if the hold is maintained.

*Deadly force:* An action, with or without the use of a weapon, intended to cause death or serious bodily injury; or, the use of any object in a manner intended to cause death or serious bodily injury. According to MS State Statute 97-3-15, the killing of a human being by the act, procurement or omission of another shall be justifiable in the following cases:
1. When committed by public officers in obedience to any judgment of a competent court,
2. When necessarily committed by public officers in overcoming actual resistance to the execution of some legal process, or to the discharge of any other legal duty,
3. When necessarily committed by public officers in retaking any felon who has been rescued or has escaped, and
4. When necessarily committed by public officers in arresting any felon fleeing from justice.

*Electronic weapon:* Weapons using short bursts of electrical energy to temporarily incapacitate a person without the intent of causing death or serious bodily injury.

*Exigent circumstances:* Conditions of such urgency and seriousness as to justify a warrantless entry, search, or seizure by police when a warrant would ordinarily be required.

*Firearm:* Any device designated, made, or adapted to expel a projectile through a barrel by using energy generated by rapidly expanding gases, or any device readily convertible to that use; including all handguns, rifles, and shotguns.

*Force, non-deadly force, or less-lethal force:* Actions not calculated under the circumstances to cause death or serious bodily injury. According to MS State Statute 97-3-17, A public officer may act upon reasonable apprehension of the surrounding circumstances; however, such officer shall not use excessive force or force that is greater than reasonably necessary in securing and detaining the offender, overcoming the offender's resistance, preventing the offender's escape, recapturing the offender if the offender escapes, or in protecting himself or others from bodily harm.

*Knife:* An instrument consisting essentially of a thin, sharp-edged, metal blade fitted with a handle.

*Lateral Vascular Neck Restraint:* A physical restraint compressing certain veins and arteries in the neck to cause a subject to lose consciousness for a brief period of time.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

*Less Lethal or Intermediate Weapons:* Procedures or weapons designed to provide force, but usually *less than deadly force. Less than lethal* is sometimes referred to as *less-lethal* or *non-deadly force*. Regardless of the name, officers know any force, especially when applied under dangerous, tense, uncertain, and rapidly evolving situations, may cause harm, serious bodily harm or death, despite the best intentions of the officer.

*Physical strength and skill:* Any physical actions by one or more officers (e.g., holding, restraining, pushing, and pulling) which may include special skills (e.g., boxing, karate, and judo) but do not include the use of *deadly force* or any weapon.

*Probable cause:* Sufficient reason based upon known facts to believe a crime is or has been committed. Probable cause must exist for a law enforcement officer to make an arrest without a warrant, search without a warrant, or seize property in the belief the items were evidence of a crime.

*Reasonable Belief, Perception and/or Response:* When a prudent man with the officer's training, expertise, knowledge, and experience would arrive at a similar conclusion. An officer's response to resistance must be based on reasonableness and necessity, not emotions.

*Serious bodily injury:* Harm that creates substantial risk of death, serious permanent disfigurement, or loss or impairment of any body function or organ.

*Use of Force Continuum:* The decision making model used to train officers in response to resistance measures.

PROCEDURES:

Officers maintain a constant readiness and ability to act in instances where, in *their perception*, the use of force or deadly force may be appropriate. By maintaining readiness and capacity, officers reduce the likelihood of opposition and of the actual need for a forceful response of any kind. While *officer discretion* is critical, the need for accountability and control of police activities is necessary to limit abuses of authority. Response to resistance measures shall be limited to those which are reasonably necessary to protect life and enforce the law under guidelines established by this policy manual.

Response to Resistance
Response to resistance, sometimes resulting in the use of deadly force, is controlled by the basic elements of <u>a reasonable officer's perception</u> and a <u>reasonable officer's response</u>. Therefore, officers may use only those response measures reasonably necessary to stop the resistance encountered and/or the perceived threat.

It is important to remember that almost all incidents faced by police are not scripted, easy to understand, or predictable as to outcome. Officers use their best effort to determine the

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

degree of resistance and apply the corresponding response. Officers must use care in evaluating a suspect's actions and perceived resistance. Justification for an officer's response to resistance must be limited to what is *known or reasonably perceived* by the officer at the time of the incident. Facts unknown at the time such a response is employed should not be considered later to determine whether the force was justified.

The amount and degree of an officer's response to achieve compliance takes into consideration several factors, including, but not limited to:

1. Nature and seriousness of the original offense committed by the suspect;
2. Nature and seriousness of the risk of injury to the officer or others;
3. Age, physical condition, and behavior of the suspect;
4. Relevant actions by any third parties;
5. Physical conditions (e.g., visibility) at the scene;
6. Feasibility and availability of alternative actions; &
7. Opportunity and actual ability of the suspect to injure the officer, himself, or others.

Officers may not intentionally use unreasonable response measures when responding to a suspect's resistance and must only use deadly force to accomplish lawful objectives. Likewise, officers are reminded that their response to resistance should be adjusted accordingly as compliance is gained.

A suspect's resistance can result in the officer's decision to use deadly force; however, such actions shall only be taken to achieve the following lawful objectives:

1. To defend himself, or others against serious threats of serious bodily injury or death;
2. To stop dangerous felony flight, where there is serious imminent risk to the public of death or serious bodily injury;
3. To prevent roaming at large by obviously mad or vicious animals; to relieve animals so badly injured that it cannot reasonably survive from injuries causing prolonged suffering; &
4. To stop imminent damage to or theft of property, which by its removal or damage seriously threatens the life or safety of others.

Only when there is a reasonable expectation that altered or damaged property may place others in imminent risk of death or serious bodily injury is the application of *deadly force* appropriate to protect property. Some examples of the use of deadly force to protect property are stopping a suspect from setting a fire, or throwing a bomb; preventing serious damage to a bridge; stopping sabotage to railroad tracks; or deterring the use or theft of what appears to be a weapon of mass destruction, bomb or other military equipment.

More often, a suspect's resistance will prompt an officer to respond with less than deadly response actions. Such actions shall only be taken to achieve the following lawful objectives:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. To preserve the peace;
2. To defend themselves, or others against unlawful violence;
3. To assist medical personnel with a combative patient;
4. To prevent the commission of self-inflicted injury, or suicide by any person;
5. To make lawful arrests or searches; to overcome resistance to such arrests or searches; and to prevent escape from custody;
6. To prevent or interrupt an intrusion on, or interference with the lawful possession of property.

Officers are, on occasion, required to protect a person from self-inflicted bodily injury (suicide attempt) or from uncontrollable circumstances. Rendering assistance may be met with resistance and an appropriate response is required. This is especially applicable in situations where a suspect is attempting to swallow a controlled substance. Officers are encouraged to consider available alternatives to protect that person from harm when selecting a response option. However, under no circumstances shall choke holds be used on a suspect in an effort to retrieve a controlled substance; i.e., grabbing around the throat. Swallowed substances shall be considered medical emergencies and dealt with accordingly.

**Response Options:**

Officers use physical strength and skill, restraint devices, chemical weapons, electronic weapons, or impact weapons in response to resistance; however, under no circumstance will warning shots be used.

Furthermore, officers have no obligation to *retreat* or *back down* before responding with a reasonable amount of force, including deadly force. Officers may consider retreat or withdrawal where delay could make a more peaceable arrest, or stop, likely if such tactics would not increase risk to him or others. In some cases, an increased show of force may reduce the response measures necessary to accomplish the officer's objective.

Officers should not attempt to affect arrests alone if there is substantial risk to himself from the arrestee or another party unless there are no available reasonable alternatives.

Officers use handcuffs or other restraining devices on all arrestees unless it is obviously unnecessary or impractical (e.g. the elderly, young juveniles, amputees, crippled, injured, or other applicable subjects). Officers must take reasonable precautions to protect arrestees from injury caused by handcuffs or other restraining devices. Furthermore, officers are reminded that their response to resistance should be adjusted accordingly after the arrestee has been subdued and/or handcuffed. See Department Policy 4.11, Transporting Arrested Persons for additional information on handcuffing suspects.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 5 of 9      01/01/2015

Biloxi_Pre-D_00036

Officers may use chemical weapons for self-protection, when subjects fail to comply with lawful commands or to subdue a person unlawfully resisting arrest. Any person on which a chemical weapon has been used must be treated or decontaminated for exposure to the chemical agent as soon as practical and thereafter monitored for possible latent effects. Officer will complete an OC Administration Form in addition to any other required report(s).

Officers may only use approved electronic weapons in accordance with this policy. An electronic weapon is used when an officer perceives a suspect to be actively resistant.

Officers use impact weapons to protect him or another from assault or to arrest a person who unlawfully and violently resists arrest if lesser methods have failed, or if circumstances warrant the immediate use of the baton. Impact weapons will be utilized in a manner consistent with correct and approved training.

All weapons will be utilized in a manner consistent with the correct and approved training. Officers not trained and currently certified with a specific weapon are not authorized to use such devices, except in extreme life-threatening emergencies.

### Use of Deadly Force:

Deadly force may not be used under the following circumstances:

1. As a warning or threat;
2. With the intent to maim, disarm or cripple a person;
3. On a person who has not caused or threatened to cause serious bodily injury or death to another person, including the officer;
4. On a person who simply flees or evades arrest;
5. At or from a moving vehicle, except in exigent circumstances, and only in an attempt to save human life;
6. Merely to prevent the destruction or theft of property, except when the destruction or theft of such property seriously threatens the life or safety of others.

### Rendering Aid

In incidents where an officer's response measures result in the injury or death of a suspect, the officer shall, in the order most appropriate for the situation:
1. Render First Aid (if applicable)
2. Call for medical assistance (if applicable)
3. Secure the scene
4. Notify a supervisor

Officers will make appropriate medical aid available to all suspects who exhibit evidence of injury following the use of any response measure. This may include, but not be limited to,

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 6 of 9                               01/01/2015

Biloxi_Pre-D_00037

observations for signs of complications, decontamination following the use of OC spray, providing basic first aid until more qualified medical personnel arrive, or calling for emergency medical assistance. If a suspect requests medical attention, appropriate medical aid will be made available and an on-duty supervisor will be notified.

Officer(s) will notify a supervisor and accompany medical personnel to the hospital if a suspect is ambulatory and/or still resisting, but is deemed to require immediate medical attention.

**Response to Resistance Reporting:**

The officer(s) initially confronted with resistance and/or employing response measures to gain compliance from a suspect shall complete a Response to Resistance entry in RMS. Only one Response to Resistance entry is required per incident; however, other officers' on-scene should provide a supplement to the initiating officer's incident report. A complete and detailed description of the event should be presented in the incident report.

The officer completing the initial incident report shall include the following information in the narrative section of the report, if applicable:

1. A description of the events leading to the officer's response; e.g., original offense, reasonable suspicion, probable cause.
2. An accurate description of the incident, the resistance presented by the suspect and officer's response;
3. A description of the weapon or device used and the manner in which it was used by both the suspect and officer;
4. A description of the injuries suffered, and the treatment given or received;
5. A list of all participants in the incident.

Other officers involved in or witnessing the incident shall provide a report of their observations that will be attached to the primary incident report.

Officers will complete an RMS Response to Resistance entry when:

1. Death, hospitalization or medical treatment is required for the suspect as a result of any arrest or confrontation;

2. An officer strikes a suspect;

3. Blood, broken skin or visible bruising is/are present on either the officer or suspect as a result of any arrest or confrontation;

4. A suspect makes a complaint of physical injury allegedly resulting from any arrest or confrontation with an officer at the time of the arrest;

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

5. A firearm is discharged, except when such a discharge is unintentional, for training or recreational use;

6. Any less-lethal weapon is employed, except in training scenarios;

7. Any firearm or ECD is pointed at a person in order to gain compliance.

Injuries to a subject occurring prior to the officers' arrival (e.g., a confrontation with non-departmental personnel, self-inflicted) will be fully described in the narrative section of the incident report.

Officers shall assist in every way possible with any investigation following a response to resistance incident. Completed reports receive executive review and should be reviewed for accuracy prior to being forwarded for review. Each report shall be reviewed to:

1. Protect the integrity of the facts and the evidence;
2. Ensure the officer's response measures complied with all appropriate state and federal laws, and department policy;
3. Determine if the officer's response measures indicate a need for special counseling, training, or disciplinary action;
4. Determine whether the situation requires further action; &
5. Identify actual or potential deficiencies in the department's policy manuals and/or training programs.

Guidelines for dealing with officer involved shooting incidents can be found in the Department's Post Shooting Incident Policy, 4.21.

## Report Routing

The officer initially confronted with and/or employing a response measure to gain compliance from a suspect shall complete an RMS Response to Resistance entry. Only one entry is required per incident. The entry shall be completed before the end of the officer's shift, unless an extension is approved by the on-duty supervisor.

The on-duty supervisor will:
1. Review the entry and make sure it is consistent with the officer's narrative; i.e., ensure the factors leading up to the officer's response measures, as well as the officer's and suspect's actions, are clearly described,
2. Complete the initial portion of the Supervisor's Assessment form, and
3. Forward the Supervisor's Assessment for to the respective Division Commander through the chain of command. The Supervisor's Assessment form will be forwarded to the Professional Standards Unit for filing.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 8 of 9                                                                                                            01/01/2015

Biloxi_Pre-D_00039

| Law Enforcement Policies and Procedures, 5.1 Response to Resistance & Deadly Force |
|---|

The Professional Standards Officer shall coordinate a semi-annual Response to Resistance meeting including the Division Commanders, the Training Officer and any other persons determined appropriate by the Director of Police. Response to Resistance submissions for the preceding six month period shall be reviewed, and the results documented and forwarded to the Director of Police.

**Allegations against Staff:**

The Director of Police will ensure a thorough investigation of all allegations of improper and/or excessive response to resistance measures. The appropriate law enforcement agency or prosecutor's office must be notified in cases where possible criminal acts are involved.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.