# Biloxi Department of Police
## Law Enforcement
## Special Operating Procedure

| Subject: Tasers | SOP Number: 4.04 |
|---|---|
| Issue Date: 01 Oct 2010 | Revision Date: |
| **Approval Authority** <br> **Title and Signature:** Director John B. Miller | |

**POLICY:** It is the policy of the Biloxi Police Department to train and certify sworn officers in the use of electronic weapons. Appropriate guidelines on the deployment and discharge of such weapons shall also be provided.

**DEFINITIONS:**

*Anti-Felon Identification System (AFIdS):* Confetti type material found inside a Taser cartridge that identifies the cartridge serial number.

*Authorized weapon:* A department approved and sanctioned weapon. No weapon is authorized for carry or use by an officer unless the agency approves it and the officer has demonstrated proficiency with the weapon type in accordance with agency guidelines.

*Certification with weapon:* Officer has demonstrated proficiency with a particular weapon, and been tested in its safe care and use. The officer is thereby authorized to carry and use this weapon in the performance of his/her official duties regardless of whether the officer is on-duty or off-duty. Officers may not carry authorized weapons without having been certified in its use.

*Deadly force:* An action, with or without the use of a weapon, intended to cause death or serious bodily injury; or, the use of any object in a manner intended to cause death or serious bodily injury.

*Drive Stun:* A Taser is discharged while in direct contact with a suspect.

*Electronic weapon:* Weapons using short bursts of electrical energy to temporarily incapacitate a person without the intent of causing death or serious bodily injury.

*Excited Delirium (aka: In-Custody Death Syndrome):* A state of extreme mental and physiological excitement, characterized by extreme agitation, hyperthermia, hostility, exceptional strength and endurance without apparent fatigue.

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.


EXHIBIT "G"

Biloxi_Pre-D_00016

*Exigent circumstances:* Conditions that are of such urgency and seriousness as to justify a warrantless entry, search, or seizure by police when a warrant would ordinarily be required.

*Firearm:* Any device designated, made, or adapted to expel a projectile through a barrel by using energy generated by rapidly expanding gases, or any device readily convertible to that use; including all handguns, rifles, and shotguns.

*Force, non-deadly force, or less-lethal force:* Actions not calculated under the circumstances to cause death or serious bodily injury.

*Reasonable Belief or Perception:* When a prudent man with the officer's training, expertise, knowledge, and experience would arrive at the same conclusion. The decision to use force must be based on reasonableness and necessity, not on emotions. Force should be used only when it is **reasonable to believe that it is** necessary.

*Taser Deployment:* A Taser is drawn and the laser is pointed at a suspect as a means of gaining compliance.

*Taser Discharge:* A Taser is drawn and the probes are discharged at a suspect as a means of gaining compliance or at an animal as a means of self defense. The Drive Stun technique shall also be considered a discharge for reporting purposes.

*Three Point Technique:* Short range discharge of Taser probes and a concurrent Drive Stun that completes a three point connection on the suspect's body.

PROCEDURES:

General Taser Information

In accordance with Department Policy 5.1, Use of Force & Deadly Force, the Taser is considered a Level Three use of force option. A Level Three option is defined as follows: The suspect is perceived by the officer to be *actively resistant*. The appropriate response is *compliance techniques*. <u>This is the threshold for any reasonable officer to consider this suspect to be a potential threat to him, other officers or other citizens.</u> Compliance techniques may include *all reasonable* means to cause the *suspect to comply as soon as reasonably possible*. These techniques may include *use of restraints, forced movement, forcing a suspect's limbs behind his back, forcing a suspect down on the floor or against a wall, deploying canine, electronic weapons or using other forms of rough physical force*. Officers should not relax care until the suspect is fully secured once they are perceived as actively *resistant*.

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Training

The Training Officer shall be responsible for establishing a training curriculum for Taser certification and refresher training. All officers must complete a certification course prior to carrying the Taser device and attend annual re-certification. A strict "No Firearms in the Classroom" stance shall be maintained during all Taser training classes. _**There shall be no exceptions to this policy requirement.**_

Instructors should ensure the following safety guidelines are followed when subjecting officers to certification exposure:

- Live Cartridge Discharge
    - Always use two spotters
    - Spotters must hold the officer under the armpits to avoid twisting the shoulders
    - Officers should be carefully lowered to the floor
    - Officers who are lying on the ground should also have spotters to prevent flailing
    - Ensure officers are wearing eye protection and looking away from the weapon
    - Always deploy probes to the back or legs
    - Aim weapon slightly to one side or the other of the torso to prevent lower probe from passing between legs if slightly low
    - Be sure the areas around and beyond the officer is clear of any bystanders or equipment though could be damaged by a probe strike
    - Probe placement should simulate realistic deployments

- Wire/Clip Attachment
    - Always use two spotters
    - Spotters must hold the officer under the armpits to avoid twisting the shoulders
    - Officers should be carefully lowered to the floor
    - Officers who are lying on the ground should also have spotters to prevent them from flailing about.
    - Consider a low muscle mass (oblique) hit and show that the officer may fight through it.

## Pre-Deployment Considerations

Officers use the Taser to gain compliance and assist in making an arrest; however, different techniques are better suited for certain situations. For instance, a Drive Stun Technique may best be employed when a suspect refuses to comply with instructions to put their hands behind their back (e.g., holding their hands under their chest or holding onto a fixed object). A standard Taser discharge may best be employed by officers not

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Biloxi_Pre-D_00018

in direct contact with suspects who are not complying (e.g., won't put an object down, show their hands, fleeing). And finally, officers should consider using a Three Point Technique when actively engaging a suspect in close quarters. This technique requires probe deployment approximately one to two inches from the suspect's body and a simultaneously Drive Stun (with the cartridge still in the Taser) to another area of the suspect's body.

Avoid Weapons Confusion: Handguns have been confused with Taser devices. Learn about the differences in physical feel and holstering characteristics between the Taser device and your handgun. This will allow you to confirm device identity under stressful situations. Therefore, the Taser will only be carried on the officer's off, or non-primary shooting, side, in the cross or off-hand draw mount. Under no circumstances will Tasers be carried on the officer's weapon side.

Plan Deployment Backup: No weapons system, tool or technique is effective 100% of the time. Consider acceptable options, alternative and backup plans in case of ineffective deployment.

Deployment Safety Procedures

Secondary Injury Risks: Taser-induced strong muscle contractions usually render a suspect temporarily unable to control his or her psychomotor movements. This may result in secondary injuries such as those due to falls. This loss of control, or inability to catch oneself, can in special circumstances increase the risk(s) of serious injury or death. Also, person who could fall on a sharp object (such as person holding a knife or other edged weapon) or suffer impact injuries to their head or other sensitive areas in a fall could also be at a higher risk. Other persons at higher risk include: those located on elevated or unstable platforms (e.g., trees, roofs, ladders, ledges, cranes, loading docks), operating a vehicle or machinery, or those who are running. Persons located in water may drown if their ability to move is restricted. For safety reasons, officers are highly discouraged from discharging a Taser on a suspect who is control of an in-gear motor vehicle. Similarly, Tasering an obviously pregnant suspect is also discouraged.

Laser Beam Eye Damage: The Taser device incorporates a laser aiming aid. Laser beams can cause eye damage. Avoid intentionally aiming at the eyes of a person or animal.

Select Preferred Target Areas: The preferred target areas are the lower torso (below the suspect's sternum) in the front, below the neck on the back or legs. Avoid intentionally aiming the Taser device at the head or face without justification.

Avoid Sensitive Areas: Significant injury can occur from Taser device deployment into sensitive areas of the body such as the eyes, throat or genitals – avoid intentionally targeting these areas without justification.

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Avoid Known Pre-Existing Injury Areas: When practical, avoid deploying a Taser device at a known location of pre-existing injury; e.g., avoid targeting the back for persons with known pre-existing back injuries, avoid targeting the chest area on persons with a known history of previous heart attacks.

Avoid Discharging around Explosives Materials, Liquids or Vapors: These include gasoline, other flammables, explosive materials, liquids or vapors; e.g., gases found in sewer lines, methamphetamine labs, and butane type lighters. Some self defense sprays use flammable carriers such as alcohol and could be dangerous to use in immediate conjunction with Taser devices.

Reload and Deploy: If a Taser device application is ineffective in achieving the desired effect, consider reloading and redeploying or using other force options, giving due consideration to the Use of Force continuum.

Restrained Suspects: Suspects whose behavior and/or demeanor indicate a potential risk of violence should be restrained at the earliest opportunity and a defensive posture maintained until the threat is diminished. However, even when restrained, hostile suspect's, as well as suspect's who are initially compliant, become combative and/or non-compliant for reasons known only to them. In such instances, an officer's safety and the safety of surrounding persons is of paramount concern. The use of a taser in such circumstances is a legitimate use of force option provided the suspect is still engaging in behavior that would be considered a Level 3 Use of Force situation; i.e., actively resistant (behavior that would lead a reasonable officer to consider the suspect a potential threat to himself, other officers or other citizens).

Control and Restrain Immediately: Begin control and restraint procedures as soon as it is reasonably safe to do so in order to minimize the total duration of exertion and stress experienced by the suspect. Officers can avoid being struck by an electrical discharge if probes, wires and the areas between the probes are avoided; otherwise, it is safe to make contact with a suspect who is being Tasered.

Post Deployment Procedures

Probe Removal: Injury or wounds caused by Taser probes will be minor in most areas of the body, as the probes have small barbs. Officers should remove the Taser probes only after the suspect has been secured. Probes can be removed by grasping one end of the probe as close to the skin as possible and pulling it straight out (in the same direction the probe entered). Tasered suspects will be transported to the hospital for evaluation and/or treatment if the probes are lodged in a sensitive area (e.g., groin, breast, throat, facial area), if the suspect requests medical attention, if problems arise during probe removal in the field or the officer does not believe he/she can safely remove the probes. Suspect's requiring medical attention may be transported to the hospital in department vehicles. Regardless, officers are reminded to take all

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

appropriate precautions to limit their exposure to blood borne pathogens. Recovered probes will be placed into the expended cartridge, point down, and the protective cover replaced. Secure the cartridge with bio hazard tape along with the taser wires and collect three to four AFIdS, whenever possible. The cartridge, wires and AFIdS will be processed as evidence and properly secured in accordance with Department SOP 4.2, Evidence Packaging.

Cartridge Replacement: Officer may obtain replacement cartridges from the on-duty supervisor or Property Officer. The Property Officer shall ensure sufficient replacement cartridges are available and the Shift supervisors shall be responsible for maintaining sufficient replacement cartridges for after-hour and weekend requirements.

Reporting: Taser deployments and discharges are considered reportable Use of Force incidents (see Department Policy 5.1, Use of Force & Deadly Force, page 10). For Use of Force Reporting purposes, each discharge delivered to a suspect is considered a reportable incident. Multiple reports are not required; however, the officers and/or a supervisor will list the number of times the weapon was discharged on the suspect and the duration of each discharge.

Video Download: Video coverage of Taser incidents shall be completed at the earliest opportunity, but not later than the end of an officer's shift, unless exceptional circumstances prohibit such downloads. Supervisory personnel shall be responsible for downloading such videos and reviewing their content for Use of Force compliance. Video content is saved to select hard drives and stored for future use. Video footage shall not be deleted without prior approval from the Director of Police.

Officers confronted with Taser malfunctions shall notify an on-duty supervisor at the earliest opportunity. The Taser shall then be inspected by a certified Taser instructor and a determination made on its functionality before being returned to service.

### Deployment Health Risks

Sudden In-Custody Death Syndrome Awareness: If a subject is exhibiting signs or behaviors that are associated with Sudden In-Custody Death Syndrome, consider combining use of a Taser device with immediate physical restraint techniques and medical assistance. Examples of Sudden In-Custody Death Syndrome include extreme agitation, bizarre behavior, inappropriate nudity, imperviousness to pain, paranoia, exhaustive exertion, "superhuman" strength, hallucinations and sweating profusely.

Continuous Exposure Risks: When practical, avoid prolonged or continuous exposure(s) to the Taser device's electrical discharge. In some circumstances, in susceptible people, it is conceivable that the stress and exertion of extensive, repeated, prolonged or continuous application(s) may contribute to cumulative exhaustion, stress and associated medical risk(s).

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Other Conditions: Unrelated to Taser exposure, conditions such as excited delirium, severe exhaustion, drug intoxication or chronic drug abuse and/or over-exertion from physical struggle may result in serious injury or death.

Breathing Impairment: Extended or repeated Taser device exposure should be avoided where practical. Although existing studies on conscious human volunteers indicate subjects continue to breathe during extended Taser application, it is conceivable that the muscle contractions may impair a suspect's ability to breathe. It is advisable to use expedient physical restraint in conjunction with the Taser device to minimize the overall duration of stress, exertion and potential breathing impairment, particularly on individuals exhibiting symptoms of excited delirium and/or exhaustion.

Vagal Response: Some individuals may experience an exaggerated response to the Taser device exposure, or threatened exposure, which may result in a person fainting.

Seizure Risks: Repetitive stimuli such as flashing lights or electrical stimuli can induce seizures in some individuals. This risk is heightened if electrical stimuli or current passes through the head region.

Pregnancy: Pregnant females are at an elevated risk from falling, muscle contractions, stress and other factors. For these and other health considerations, it is advisable to avoid using the Taser device on obviously pregnant females whenever possible.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.