```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 3                        SOUTHERN DIVISION
 4
 5

 6    ALLEN DOUGLAS HALE, III,
            Plaintiff,
 7

 8    VERSUS            CIVIL ACTION NO: 1:16-cv-113-LG-RHW

 9
      CITY OF BILOXI, MISSISSIPPI;
10    KENNETH GARNER, Individually;
      DARREN LEA, Individually; and
11    JOHN AND JANE DOES 2-10,
      Individually,
12          Defendants.

13

14

15

16
                    DEPOSITION OF NICHOLAS SONNIER
17

18         Taken at Biloxi Public Safety Building,

19         170 Porter Avenue, Biloxi, Mississippi,

20         on Monday, April 3, 2017, beginning

21         at 3:17 p.m.

22

23

24

25
```

| | |
|---|---|
| 1 | A. Yes. |
| 2 | Q. And do you know who told you that? |
| 3 | A. I know it wasn't Sergeant Garner, so I'm |
| 4 | assuming it was Sergeant Lea. I can for a fact |
| 5 | tell you that Sergeant Garner wouldn't tell me |
| 6 | anything. |
| 7 | Q. Do you have any reason to believe it |
| 8 | could have been anybody but Sergeant Lea that told |
| 9 | you that? |
| 10 | A. No. Because no one else was there at |
| 11 | the time. |
| 12 | Q. And that would be the proper procedure |
| 13 | for effectuating an arrest warrant pursuant to the |
| 14 | City of Biloxi policies and procedures, by |
| 15 | knocking on the door and having the suspect answer |
| 16 | and announcing your presence? |
| 17 | A. Typically, yes. |
| 18 | Q. As an investigator, are you familiar |
| 19 | with all the City of Biloxi policies and |
| 20 | procedures for use of force, arrest procedures, |
| 21 | anything? |
| 22 | A. Yes. |
| 23 | Q. Would you agree that you're always to |
| 24 | inform the suspect that he's under arrest, or in |
| 25 | this case, that he has an arrest warrant? |

Schroeder-Lanoux Reporting & Legal Video, Inc.
(228)875-2684 - www.schroederlanoux.com

1          MR. ROS: Let me object to the form of
2  the question to the extent he doesn't have
3  the policy in front of him, number one, and
4  the circumstances of each individual arrest.
5  But you can go ahead with your question. I'm
6  just objecting to the form.
7          MR. HOLDER: That's fine. I'll go ahead
8  and mark this as Exhibit 3, the arrest
9  procedures.
10                 - - -
11         (Exhibit 3 was marked.)
12 BY MR. HOLDER:
13     Q. By and large, you would agree that in
14 effecting an arrest, whether it be a misdemeanor
15 or felony or any other arrest, you are to announce
16 your presence and objective and tell somebody
17 they're under arrest?
18     A. Yes.
19     Q. Did they train y'all on formulating a
20 plan for serving an arrest warrant?
21     A. There's no formulation for serving an
22 arrest warrant. Every situation is different. It
23 just depends. If these guys get a call that
24 there's a wanted subject in a trailer, they're
25 responding to it.

1          Now, the opposite of a high risk
2  warrant, would you call that a low risk warrant?
3  Let's just say, for instance, credit card fraud.
4      A.   High risk warrants and other warrants.
5  I wouldn't say "low risk."  I don't think anything
6  is low risk.
7      Q.   We'll call it "other warrants."  What
8  type of, let's just call it, an approach plan is
9  customary?
10     A.   If a guy's known to be there and has a
11 warrant for credit card fraud, customarily, if it
12 was me, I would probably drive up, get out, and
13 walk up and knock on the door.
14     Q.   Would you have your gun drawn at that
15 time?
16     A.   I couldn't say.  I wasn't there.  I
17 don't know what kind of feelings they were getting
18 when they were there or what was going on.
19     Q.   Okay.  Now, in your narrative -- again,
20 go back to Mr. Edmonson here -- there's a
21 statement in there about packages.  He was aware
22 that some packages were being delivered there.  Do
23 you recall him making that statement to you?
24     A.   Yeah, if I wrote it down, he did.
25     Q.   Do you remember if you asked him how he

1 knew that?
2     A. I didn't.
3     Q. And there's also mention of an
4 investigator in that paragraph. Do you know who
5 that investigator might be?
6     A. I do not. Had I known, I would have
7 included that in my narrative. Being I just
8 listed it as an investigator, I never figured out
9 who he actually talked to.
10     Q. Okay. And I'm not trying to be tricky
11 or anything like that. I think I know who that
12 is. I'm not 100 percent positive. That's why I'm
13 here asking you. If you don't know, you don't
14 know.
15     Now, when you interviewed Hazel, you say
16 she did tell you that she heard Doug ask what they
17 were there for; is that right?
18     A. Uh-huh.
19     Q. And if serving an arrest warrant on a
20 suspect and they ask -- you know, upon their
21 announcement that it's Biloxi police and the
22 suspect asks what they're there for, do you
23 normally tell them what you're there for?
24     A. Uh-huh. Yes.
25     Q. Do you have any clue what they were