Mark S. Dunston
PO Box 1706
Ocean Springs, MS 39566
(228) 348.1189

---

Rebecca B. Cowan, Esq.
Currie Johnson Griffin & Myers, P.A.
P. O. Box 750
Jackson, Mississippi 39205

September 30, 2016

Ms. Cowan,

As requested, I have reviewed the documents you provided me in reference to Hale v. Biloxi. After reviewing those documents, I have reached certain opinions and offer the following:

1. Qualifications

   - I am a certified law enforcement officer and trainer, beginning my career in law enforcement in 1984.
   - In my career I have served as a patrol officer, a narcotics detective, academy trainer, academy director, SWAT team member, SWAT commander, sergeant, captain, and chief of police.
   - As a law enforcement trainer I have trained thousands of federal, state, and local law enforcement officers from every state in the United States, the territories of Puerto Rico and the U.S. Virgin Islands, and internationally, including Hong Kong, China, Canada and Brazil.
   - I have trained law enforcement officers in person and through training media including television, video and written word on topics including police use of force, officer survival, and arrest procedures.
   - As a law enforcement executive I have written, enacted and enforced numerous policies and procedures relative to the operation of a law enforcement agency.
   - I am a graduate of the 191st session of the FBI National Academy.
   - I am a graduate of the 20th Senior Management Institute for Police.
   - I have authored numerous articles published in national law enforcement periodicals.
   - I am the author of one book and contributing author to two additional books on law enforcement.
   - My work has been cited in other authors' works.


EXHIBIT "F"

1

- I have conducted, delivered and published research on issues concerning police use of force and officer survival.
- I have lectured and delivered research findings at national and international professional peer association conferences.
- I have testified in both state and federal court districts in five states on the topics of police and security procedures, use of force, and policy.
- I have included my curriculum vitae and fee schedule with this document

2. Testimony Previous Four Years

   - Perez v. Collier Co., FL
   - McClain v. MS Highway Patrol
   - Burton v. City of Jackson, MS and MS Bureau of Narcotics
   - Williams V. City of Natchez, MS
   - Hearne v. Jackson County, MS
   - Gammel v. Coahoma Co. Community College, MS
   - State of CA vs. Deputy Dayle Long
   - Skinner v. Hinds CO SO, MS
   - Salvato v. Marion CO, FL
   - Hasskamp v. Orange CO, FL
   - Brown v. Orange CO, FL
   - Washington v. City of Waldo, FL

3. Material Reviewed

   - First Amended Complaint
   - Case Pleadings
   - Phone and Dispatch Recordings
   - Gulfport PD Crime Scene Unit Report File
   - MBI Report File
   - Recorded Statement of Sgt. Darren Lea
   - Recorded Statement of Sgt. Kenneth Garner
   - Recorded Statement of Ofc. Robert McKeithen
   - Personnel File, Sgt. Garner
   - Personnel File, Sgt. Lea
   - Personnel File, Ofc. McKeithen
   - BPD Policy, Arrest Procedures
   - BPD Policy, Abuse of Position
   - BPD Internal Affairs Report
   - TASER Video
   - In-Car Video
   - Photos Extracted from TASER Video
   - Plaintiffs' Expert's Designation and Report

4. Opinion

I was asked to review the above listed material and offer my opinion on the officers' actions in this incident. You also asked me to consider the policies and practices of the City of Biloxi, MS Police Department (BPD). Having reviewed the documentation sent to me to date, I employed comparative methodology in determining my opinions relating to the plaintiffs' claims and in measuring the officers' actions. This method of comparing the actions of the officers against that, which is generally, accepted practice and training in the law enforcement profession is a common and consistently applied method when evaluating an officer's actions. I have also relied upon my thirty-two plus years of law enforcement, my training, experience and education, as well as my having trained more than forty thousand law enforcement officers from every state in the United States as well as other countries utilizing well known and generally accepted training programs, and my personal knowledge of the training and operational standards generally accepted in the law enforcement profession. Therefore, all of my opinions are within a reasonable degree of professional certainty and do not constitute any inference on matters to be decided by the trier of fact.

It is my opinion that BPD Sgt. Kenneth Garner and Sgt. Darren Lea acted in a manner consistent with the current training and practices of the law enforcement profession. Both sergeants were involved in the arrest of a person on an active warrant. The plaintiff argues that the warrant was simply for a non-violent crime, putting forth the theory that officers should not expect violence during such an encounter.

Officers throughout the profession are assaulted and/or killed every day in our country detaining or arresting what are perceived to be non-violent offenders. As I instructed to thousands of officers as an instructor with the Calibre Press Street Survival training program the reason for force, even deadly force, usage often times has nothing to do with the reason for the initial contact. Any officer survival or use of force instructor will have to agree.

The officers in this incident clearly announced that they were police officers. The officers gave very clear, concise commands to Mr. Hale as to what was expected of Mr. Hale. These actions were consistent with that which is trained throughout the law enforcement profession, including within the certified academies in the State of Mississippi. Mr. Hale claims the officers did not tell Mr. Hale that Mr. Hale was under arrest. During his internal affairs interview, Sgt. Lea stated that Sgt. Lea informed Mr. Hale that the officers had a warrant for Mr. Hale. While Sgt. Lea's declaration cannot be heard on the available video and audio, I am reminded by my training and experience that law enforcement executives and officers are instructed under the United States Supreme Court case law from Graham v. Connor, 490 US 386 (1989), that force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Relying only on videos depicting incomplete segments of the encounter without giving credence to the officer actually at the scene who had to perceive and process the events live and without time to reflect upon the event would certainly be employing 20/20 hindsight.

3

Initially, Sgt. Lea had a firearm drawn and at the ready for use. During the encounter, Sgt. Lea decided that Sgt. Garner had Mr. Hale covered with lethal cover so Sgt. Lea holstered the firearm and drew the TASER for non-lethal cover. This action is consistent with that which I have trained officers throughout the profession to perform when there exists a potential for resistance or aggression from an arrestee based on the officer's perception of the arrestee's actions resembling possible flight or assault. According to the sergeants, Mr. Hale was acting a manner the officers perceived as non-compliant and as Sgt. Lea stated Mr. Hale was acting in a hesitant manner consistent with someone looking for a weapon to use or stalling for a course of action, such as thinking about a plan of resistive or assaultive action. Sgt. Garner observed similar behavior based on previous experience that Mr. Hale was acting with false compliance. False compliance is term officers are made aware of through officer survival training programs throughout the profession. False compliance is when a suspect says or does something to lure an officer into a false sense of security that the suspect is complying, but in reality, the suspect is preparing for an assault or flight. Sgt. Garner described this effect very well in the IA interview.

The actions observed by the sergeants that would lead an officer to perceive false compliance included Mr. Hale's verbal compliance conflicting with Mr. Hale's actual physical movements such as taking little shuffle steps instead of walking at a normal stride. Further, Mr. Hale, according to Sgt. Garner, reached way past the dropped cigarettes on the camper floor, concealing Mr. Hale's hand from the sergeants' view.

It has been my experience that the type of behavior Mr. Hale exhibited to the officers often preceded a flight attempt or a physical assault. Commonly instructed throughout the law enforcement profession as a non-verbal indicator of an attack or flight, I as well as many other Street Survival instructors, taught thousands of officers to be aware this behavior.

After several verbal commands, including clearly stating that the TASER would be deployed or that his actions might cause officers to use lethal force, Mr. Hale made a sudden move toward his pants pocket, or as perceived by Sgt. Lea, Mr. Hale made a sudden move toward Mr. Hale's waistband. Both of these locations, as it is commonly instructed throughout the law enforcement profession, are the most utilized carry position by people for firearms not in a holster. As a result, Sgt. Lea fired the TASER and Sgt. Garner fired his sidearm, striking Mr. Hale.

Upon removing Mr. Hale from the doorway of the motorhome, the officers called for emergency medical services for Mr. Hale and notified their command.

The response of the Biloxi Police Department to this incident was consistent with the very practices recommended by International Association of Chiefs of Police (IACP), as well as the State of Mississippi Board on Law Enforcement Accreditation. The agency conducted a bifurcated investigation of the incident and the officers' actions. As is the standard practice in the State of Mississippi, BPD called for the assistance of the Mississippi Bureau of Investigation (MBI) to handle the criminal investigation while the

4

BPD internal affairs unit conducted the internal investigation. The practice of a bifurcated investigation, including the use of an outside agency, is preferred throughout the law enforcement profession.

As for the policies and practices of the BPD, I have reviewed the policies previously listed. The BPD policies are consistent with what is found throughout the law enforcement profession, and those that are prescribed as best practices by accrediting organizations. BPD is an accredited agency, and as such, the agency must develop, practice, enforce, and verify proof that the proper use of the prescribed policies is being followed.

I base my opinions on information provided to me to date, on references in my report and on current, and period current, generally accepted training and operational procedures in the law enforcement profession, Mississippi statutes regarding law enforcement standards and my experience and training as a law enforcement officer, executive, and international trainer. I have testified in court within the past four years including the cases of, Gammel v. Coahoma Community College (11th Circuit MS), Burton v. Mississippi Bureau of Narcotics and the City of Jackson, MS (Hinds Co. Circuit Court), Skinner v. Hinds CO, MS (Fed. S. Dist. MS), State of CA v. Dayle Long (Riverside Co., CA Superior Court), Upchurch v. MHP (Fed. Dist. S. MS), Salvato v. Marion County, FL (Fed. Dist. Middle FL), Hasskamp v. Demmings (Fed. Dist. Middle FL), Brown v. Orange County, FL (Fed. Dist. Middle FL), Washington v. City of Waldo, FL, and Perez v. Collier Co., FL. I currently receive $150 per hour for my time. My CV and fee schedule are attached to this report. If I am provided new information concerning this case, including trial testimony, I may provide further opinions. I reserve the right to attend the trial of this matter and provide further opinions dependent upon trial testimony.

Professionally,

Mark S. Dunston